Kevin D. Rising (SBN 211663)
kevin.rising@btlaw.com
Garrett S. Llewellyn (SBN 267427)
garrett.llewellyn @btlaw.com
**BARNES & THORNBURG LLP**
2029 Century Park East, Suite 300
Los Angeles, CA 90067
Telephone: (310) 284-3892
Facsimile: (310) 284-3894

Jeff M. Barron (*pro hac vice* forthcoming)
jeff.barron@btlaw.com
**BARNES & THORNBURG LLP**
11 South Meridian Street
Indianapolis, IN 46204
Telephone: (317) 231-1313

Megan New (*pro hac vice* forthcoming)
megan.new@btlaw.com
**BARNES & THORNBURG LLP**
One North Wacker Drive, Suite 4400
Chicago, IL 60606
Telephone: (312) 357-1313

*Attorneys for Plaintiff*
ONE SOURCE TO MARKET, LLC

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

ONE SOURCE TO MARKET, LLC, a California Limited Liability Company,

Plaintiff,

v.

HENCKELS J.A. ZWILLING, LLC, a Delaware Limited Liability Company,

Defendant.

Case No. 2:26-cv-13118

**COMPLAINT FOR:**

1. Federal Trademark Infringement in Violation of the Lanham Act, 15 U.S.C. § 1114(a);
2. Trade Dress Infringement, Federal Unfair Competition, and False Designation of Origin in Violation of the Lanham Act, 15 U.S.C. § 1125(a);
3. Violation of California Bus. & Prof. Code § 17200 *et seq.*;
4. Common Law Trademark and Trade Dress Infringement; and
5. Common Law Unfair Competition

**[JURY TRIAL DEMANDED]**

Plaintiff One Source to Market, LLC d/b/a HexClad Cookware ("Plaintiff" or "OSTM") brings this Complaint for Trademark and Trade Dress Infringement under the Lanham Act, Unfair Competition in Violation of California Bus. and Prof. Code § 17200 et seq., trademark infringement, trade dress infringement and unfair competition under the common law against Defendant Henckels J.A. Zwilling, LLC ("Defendant" or "Henckels") and alleges as follows:

1. Henckels, a traditional cookware company, has chosen to copy OSTM's innovative HexClad products rather than even attempt to innovate on its own. Henckels has infringed OSTM's trademarks and misappropriated the distinctive hexagon design on HexClad pans ("HexClad's trade dress"). Henckels' wrongful conduct includes not only introducing a product with a confusingly similar name and look, but also choosing a marketing and sales strategy deliberately designed to trade off years of hard work by OSTM to introduce its HexClad products to consumers. Henckels has confused consumers by trying to associate its inferior products with HexClad's superior design. Henckels' misconduct must stop. That is why OSTM, which owns the valuable HexClad brand, is asking for the Court's assistance to halt Henckels' infringement and unfair competition under federal and California law.

2. OSTM, a direct-to-consumer cookware company, produces the HexClad cookware that sears like steel while retaining the practicality of a nonstick surface. OSTM has invested hundreds of millions of dollars in promoting its trademarked HexClad® brand and innovative HexClad products, including by doing product demonstrations at Costco stores around the country. HexClad's distinctive design of hexagons against a dark surface with exposed stainless steel rims has been a fixture in OSTM's advertisements, public displays, and promotional demonstrations of HexClad. The distinctive hexagonal pattern on HexClad's cooking surfaces causes HexClad products to stand out from their competitors and identifies the HexClad brand ("HexClad's trade dress"):



Barnes & Thornburg LLP
Attorneys At Law
Los Angeles



**HexClad**

3. HexClad's trade dress has become uniquely linked in the public mind to the HexClad brand. OSTM's Costco "roadshows" have educated consumers and effectively created a new, multi-billion dollar market for hybrid cookware.

4. Henckels, a multi-national cookware company headquartered in Germany, saw an opportunity in HexClad's success. Rather than compete fairly, however, Henckels chose to mimic OSTM's trademark, copy HexClad's trade dress, and introduce the accused HXAGON hybrid cookware in 2024 (the "HXAGON cookware"):



**Henckels' infringing HXAGON Cookware**

5. Moreover, Henckels did not merely copy OSTM's trademarks and HexClad's trade dress in introducing its infringing HXAGON cookware: On information and belief, Henckels struck a lucrative deal with Costco to introduce HXAGON at Costco stores to trade off of OSTM's years of Costco roadshows promoting HexClad's design. Henckels also emphasized its choice to use HexClad's trade dress by naming its product "HXAGON" and prominently featuring hexagons in its advertisements and product packaging. For example:




6. The effect of Henckels' choices was to deceive consumers into mistakenly believing its HXAGON cookware was sponsored or endorsed by, or

affiliated, associated or connected with, OSTM and its HexClad brand. And consumers have been actually confused by Henckels' deliberate and misleading misconduct: customers who purchased HXAGON products have contacted OSTM for support, service, or returns.

7. Indeed, although Henckels copied HexClad's name and trade dress with the HXAGON cookware to trade on the goodwill associated with the HexClad brand, Henckels did not try to match HexClad's quality. OSTM designed HexClad to be cookware that lasts for years under heavy use. HexClad's high-quality design led celebrity chef Gordon Ramsay to use and ultimately agree to endorse the HexClad product line. HXAGON does not have the same qualities. Rather, Henckels cut corners to sell HXAGON at a lower price point than HexClad. As a result, consumers have contacted OSTM and requested that OSTM replace or repair their HXAGON products when they wear out prematurely or otherwise fail to meet HexClad's high standards. This actual customer confusion demonstrates the harm caused by Henckels' willful trademark and trade dress infringement. Customers have come to associate HexClad's distinctive hexagon pattern as a mark of quality. Henckels deceives consumers as it offers the accused HXAGON product alongside HexClad at OSTM's Costco roadshows, implying that it has the same product qualities as the HexClad products featured in demonstrations. The infringing HXAGON product, however, does not have those product qualities and cannot match HexClad's qualities.

8. On March 8, 2024, OSTM wrote to Henckels and demanded that it cease and desist from its infringements and misconduct. In implicit recognition that it had overstepped legitimate practices, Henckels responded by, among other things, changing HXAGON's name to "Paradigm." On information and belief, however, Henckels made no other changes to its products, their designs, or Henckels' marketing practices. Among other things, Henckels' formerly named HXAGON product continues to use HexClad's trade dress, continues to emphasize a hexagonal pattern

in its product displays and marketing, and continues to associate its products with OSTM's demonstrations of HexClad at Costco stores around the country.

9. Even after Henckels changed the product name from HXAGON to Paradigm, consumers have continued to be confused by Henckels' decision to copy HexClad's distinctive style and trade dress. OSTM has also continued to receive complaints that Henckels' HXAGON products do not meet HexClad's high standards—a clear indication that consumers continue to be confused as to the source or affiliation of Henckels' hybrid products. Indeed, on information and belief, the way Henckels deliberately chose to introduce the HXAGON products and associate them with OSTM's demonstrations of HexClad at Costco stores around the country has created lasting confusion that is likely to persist for the foreseeable future. Accordingly, OSTM files this lawsuit for (a) damages for Henckels' past trademark infringement through its prior use of the HXAGON name; (b) damages for Henckels' past and continuing trade dress infringement and unfair competition; and (c) a permanent injunction barring Henckels from using HexClad's trade dress or continuing to try to associate its products with OSTM's HexClad brand.

**THE PARTIES**

10. OSTM is a limited liability company organized under the laws of the State of California with a principal place of business at 555 Mateo Street, Los Angeles, CA 90013.

11. On information and belief, Henckels is a Delaware Limited Liability Company with a principal place of business at 270 Marbel Avenue, Pleasantville, New Jersey. Henckels also maintains an office at 100 Citadel Drive #505, Commerce, CA 90040, has registered to do business in California with the California Secretary of State, and maintains at least two outlet stores in this District in Commerce and Riverside, CA.

12. Henckels claims to trace its history back almost 300 years as a traditional company offering pots, pans, and other cookware to customers around the

world, including in this District. Although traditional pots and pans lack the advantages of the patented hybrid technology that is a part of HexClad's innovative cooking technology, Henckels' traditional products still compete with HexClad pots and pans as an alternative cookware product for consumers to consider. On information and belief, however, Henckels had never offered hybrid cookware until it introduced the infringing HXAGON hybrid cookware in 2024.

13. On information and belief, Henckels offers for sale and sells its infringing HXAGON hybrid cookware in California and in this District, including through its outlet stores in this District and at Costco stores in this District.

**JURISDICTION AND VENUE**

14. This action arises under the federal Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, California Business and Professions Code, §§ 17200, *et seq.*, and the common law.

15. The Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

16. The Court may further exercise jurisdiction over the state and common law claims under 28 U.S.C. § 1367(a) and principles of pendent jurisdiction because those claims are substantially related to the federal claims.

17. This Court has personal jurisdiction over Henckels and venue is proper pursuant to 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the acts giving rise to the claims occurred and are occurring in this District. Venue is proper as to Henckels in this District because this Court has personal jurisdiction over Henckels.

**OSTM INTRODUCES HEXCLAD**

18. OSTM was founded by Daniel Winer and Cole Mecray—two salesmen with considerable experience selling cookware—who discovered a revolutionary cookware product on a trip to China to source merchandise. During this trip in 2015, Mr. Winer learned of a materials engineer in Korea who had designed and patented a non-stick pan with a pattern on its cooking surfaces formed by raised stainless steel


BARNES & THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

lines. The combination of the pattern of raised stainless steel "peaks" with nonstick surfaces in the "valleys" between created a near-perfect combination of the ability to sear food while retaining the benefits of nonstick cookware.

19. Mr. Winer and Mr. Mecray immediately saw the potential for this product, particularly if built with heavy-gauge, quality materials: the resulting product would have the functionality of cast iron pans, the durability of stainless steel, and the convenience of traditional nonstick cookware. Moreover, although the hexagonal pattern of raised steel lines was not required to achieve this functionality—nearly any sufficiently dense pattern would suffice—the ornamental qualities of the design were striking. The repeating hexagons of polished steel placed against the dark nonstick surface were distinctive and stuck in the mind. They also distinguished the pans from competing hybrid designs, creating a uniform yet unique appearance that was ideally suited for sale in the consumer market. Mr. Winer and Mr. Mecray, through OSTM, immediately negotiated a distribution deal with exclusive rights to the technology, trade dress and design. Drawing inspiration from the distinctive hexagonal trade dress, OSTM named the new product line "HexClad."

20. OSTM started selling HexClad pans in the United States in 2016. The first year for any start-up is challenging and it was particularly challenging for OSTM, which had to compete against much larger and more established rivals selling traditional cookware—including Henckels. Indeed, HexClad's ornamental hexagonal patterns were memorable but the marketplace had little experience with high-quality hybrid cookware. In 2017, however, OSTM secured an agreement with Costco to begin doing in-store demonstrations of its HexClad products to begin educating the public as to the benefits of HexClad's technology. OSTM has spent countless hours at these Costco "roadshows" over almost a decade promoting HexClad and showing off its distinctive hexagonal trade dress. It was through these Costco demonstrations, carried out in Costco stores around the country, that the public first started to

appreciate the virtues of HexClad's technology and associate it with the HexClad name and HexClad's trade dress.

## OSTM'S EXTENSIVE MARKETING OF HEXCLAD'S DISTINCTIVE HEXAGONAL DESIGN

21. OSTM's marketing of HexClad has not been limited to product roadshows at Costco, however. Indeed, when COVID-19 struck in March 2020, HexClad lost a major sales channel—*i.e.*, thousands of live demonstrations in Costco stores—HexClad faced a critical choice: it could fold up shop, distribute its cash, and shutter the business or it could double down. HexClad doubled down. In April and May 2020, HexClad poured its money into online advertising. While HexClad had spent only $180,000 in online advertising in February 2020, HexClad spent ***nearly $1 million more*** in May 2020 ***alone***.

22. OSTM continued to increase its marketing budget for HexClad in every year that followed. And in every advertisement, roadshow, and online promotion OSTM emphasized HexClad's distinctive hexagonal trade dress. For example, in Fall 2021, HexClad created and aired a television commercial featuring celebrity chef Gordon Ramsay. The "Hybrid Revolution" television commercial began airing in 2022 and is still available online today. The HexClad name and HexClad's distinctive hexagonal trade dress are prominently featured throughout this commercial.


0:05 / 0:29


0:12 / 0:29




23. HexClad's "Hybrid Revolution" advertisement aired throughout the United States, both through traditional channels (like television) as well as via online channels and social media. Indeed, OSTM markets HexClad through substantial paid advertisements on social media, including via YouTube, TikTok, Facebook, and Instagram.

24. The result of OSTM's marketing of HexClad—which caused consumers to discover the premium quality of the cookware itself—has resulted in explosive growth. The LA Times recently ranked OSTM's HexClad business as the ninth fastest growing company in Los Angeles, with a growth rate of 194.7% between 2022 and 2024.[1] JP Morgan reported that it helped secure a $100 million investment in 2024 from Studio Ramsay, a joint venture between Chef Ramsay and FOX Entertainment.[2] What started as (essentially) a two-person startup in 2016 is now a company with

[1] *HexClad*, L.A. Times, https://www.latimes.com/b2b/industry-lists/fastest-growing-companies/los-angeles/hexclad (last visited November 3, 2026).
[2] *How HexClad's New Take on Kitchen Essentials Unlocked Growth*, J.P. Morgan https://www.jpmorgan.com/insights/banking/investment-banking/how-hexclad-scaled-a-brand-built-on-innovative-cookware.

more than $500 million in annual revenue, with the capability to launch its first Super Bowl commercial in 2025 featuring Chef Ramsay and actor/comedian Pete Davidson in which HexClad was compared to "top secret alien cooking technology":









25. Between 2020 and July of 2026, OSTM spent approximately $318 million promoting the HexClad brand on television, online, through various social media channels, and through live product demonstrations. The result has been explosive growth, with revenues increasing more than seven-fold between 2020 and 2023, the year before Henckels introduced its copycat HXAGON product in 2024.

26. HexClad's distinctive name and trade dress became associated with high quality, further fueling its growth and permitting HexClad to sell at a premium price. The "peaks" of steel and "valleys" of nonstick surface, now made entirely of a proprietary ceramic nonstick surface, are coupled to an aluminum core for even heat distribution. Indeed, HexClad builds and maintains heat much like cast iron. HexClad's magnetized base makes it compatible with induction as well as traditional stoves. HexClad's superior construction also makes it suitable for use with metal utensils and capable of withstanding high oven temperatures, which are attributes not shared by competing nonstick cookware. Throughout its explosive growth, OSTM used the HexClad trademarks and HexClad's distinctive hexagon trade dress as critical identifiers of both its products and their product qualities.



BARNES & THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

27. HexClad cookware has also received extensive favorable coverage in the press. In an October 2020 article, Esquire Magazine named the newly introduced HexClad Wok as among "The Best (and Best-Looking) Cookware of 2020" writing "[t]he technology is like something out of Tony Stark's kitchen. It's insane."[3] The founder of The Kitchn, an online cooking resource, wrote in November 2022 that the 12-inch HexClad pan had become her "new go-to piece of cookware that can tackle pretty much anything I throw at it. To say I'm smitten would be an understatement."[4] An older review from Taste of Home was recently updated in June 2026 with one member of the review team reporting that "I'm still so pleased with this purchase and the pans' longevity. I tell all my friends/family who are getting married to add HexClad to their registry!"[5]

---

[3] Dom Nero, *The Best (and Best-Looking) Cookware of 2020*, Esquire (Oct. 21, 2020) https://www.esquire.com/food-drink/g34428190/best-cookware-2020/.

[4] Andrea Kaufman, *I Tried The Gordon Ramsey-Approved Pan and It's Become My New Go-To Piece of Cookware ('It's on Sale')*, The Kitchn (Nov. 23, 2022) https://www.thekitchn.com/hexclad-12-inch-hybrid-pan-review-23480142.

[5] Allison T.S. Robicelli, *I Tried The Gordon Ramsey-Approved HexClad Pan—Here's Why It's a Cooking Superstar*, Taste of Home (last updated June 9, 2026) https://www.tasteofhome.com/article/hexclad-cookware-review/.

HOME > TEST KITCHEN > COOKING WITH GEAR & GADGETS



TASTE OF HOME

# I Tried the Gordon Ramsay-Approved HexClad Pan—Here's Why It's a Cooking Superstar

**BY** Allison T.S. Robicelli

**TESTED BY** Annamarie Higley and Katie Bandurski

*Taste of Home's Editorial Process*

**UPDATED ON** Jun. 09, 2026

SAVE

28. All these reviews, and others, commented on HexClad's ornamental hexagonal design as a distinctive marker of HexClad cookware. They reflect that the distinctive HexClad brand and ornamental hexagonal design have been distinctive source identifiers of OSTM's hybrid cookware in the marketplace and the minds of consumers. HexClad's distinctive and well-known trade dress identifies HexClad as the source of the pans.

29. Once the restrictions associated with the COVID-19 pandemic started to be lifted, OSTM returned to doing Costco roadshows around the country in addition to its robust marketing of HexClad online and through advertisements. OSTM used its Costco roadshows to continue to demonstrate the capabilities and high quality of a true hybrid cookware. During thousands of demonstrations since 2021, OSTM's representatives personally demonstrated HexClad's distinctive qualities to customers around the country while repeatedly associating HexClad's performance with the HexClad name and distinctive hexagonal trade dress. At least by 2023, OSTM's

traditional advertising, strong online and social media presence, and Costco roadshows had established in the minds of consumers that HexClad's trade dress was a unique symbol of quality associated with the HexClad brand.

## OSTM'S REGISTERED AND COMMON LAW TRADEMARKS AND TRADE DRESS

30. Through its extensive investment in developing, advertising, promoting, and marketing its HexClad mark, hexagon logos, and the ornamental hexagon design on its hybrid cookware since 2016, OSTM has established those goods and services in the minds of consumers as high-quality goods offered by OSTM. As a result, and in addition to the registered trademarks discussed below, OSTM enjoys extremely strong common law trademark rights in its HexClad name, HexClad logos, and HexClad's distinctive hexagon trade dress, embodying significant and invaluable goodwill. OSTM acquired those rights before Henckels entered the market with its infringing HXAGON products bearing an almost identical hexagon design on its own hybrid cookware.

31. In addition to its common law rights, OSTM applied for, and received, several trademark registrations for its hybrid cookware, related kitchen utensils, and retail services related to the sale of its hybrid cookware in order to protect its valuable trademarks in the HexClad name (collectively, the "Registered HexClad Marks"):

| Trademark Registration | Goods/Services | Registration Date |
|---|---|---|
| U.S. Trademark Registration No. 7,218,402:<br>HEXCLAD | Int'l Class 08: kitchen knives; Steel cutlery, namely, household knives; chef knives; knife sets comprised of steel knives for cooking, paring knives, bread knives, santoku knives, utility knives, kitchen knives, steak carving knives, carving knives and slicing knives<br><br>Int'l Class 21: mixing bowls; knife blocks; non-electric cookware, namely, pots and pans; non-electric woks; plates; cutting boards; pot lids | November 14, 2023 |

| | | |
|---|---|---|
| | Int'l Class 35: retail and online retail store services featuring cookware and kitchen tools; retail and online retail store services featuring pots, pans, and lids | |
| U.S. Trademark Registration No. 5,111,350: <br><br> HEXCLAD | Int'l Class 21: cookware, namely, pots and pans | December 27, 2016 |
| U.S. Trademark Registration No. 6,699,277: <br><br> HEXCLAD | Int'l Class 35: retail and online retail store services featuring cookware and kitchen tools; retail and online retail store services featuring pots, pans, and lids | April 12, 2022 |
| U.S. Trademark Registration No. 6,981,450: <br><br> HEXCLAD | Int'l Class 08: kitchen knives; Steel cutlery, namely, household knives; chef knives; knife sets comprised of steel knives for cooking, paring knives, bread knives, santoku knives, utility knives, kitchen knives, steak carving knives, carving knives and slicing knives <br><br> Int'l Class 21: mixing bowls; knife blocks | February 14, 2023 |

32. These registrations are valid, subsisting, and in full force and effect. True and correct copies of the registrations for the Registered HexClad Marks are attached hereto as **Exhibits A–D.**

33. As a result of these registrations, OSTM is entitled to a presumption of nationwide exclusive trademark rights to use HexClad dating back to December 27, 2016, the date of registration of U.S. Registration No. 5,111,350. 15 U.S.C. § 1057(b) and 15 U.S.C. § 1072.

## HENCKELS' INTRODUCTION OF HXAGON

34. HexClad's success established the hybrid cookware product class as the next advance in cookware and HexClad's premium construction meant that it sold at a premium price point. In or around 2023, OSTM learned that Costco was interested

in determining whether it or another cookware manufacturer would provide a line of hybrid cookware to be sold at a lower price point. OSTM was not interested in entering this business. Henckels, apparently, was. Rather than develop its own product and choose any number of available designs for its pans, however, Henckels chose to create an inferior copycat of HexClad and its distinctive ornamental hexagon design to create a false association between HXAGON and HexClad as well as take advantage of OSTM's nearly decade-long efforts to educate the public about HexClad and hybrid cookware via OSTM's Costco roadshows.

35. Henckels introduced the HXAGON product line at Costco at the start of 2024. The market immediately noticed the strong resemblance of the HXAGON name and product design to OSTM's trademarks and HexClad's trade dress and assumed HXAGON was associated with HexClad. For example, the headline of a January 19, 2024, article in Parade Magazine misidentified HXAGON as a "Version" of HexClad that was "Wildly Cheap":


Food & Drink

Costco Is Selling a Wildly Cheap Version of the Popular Hexclad Pans

Elegant pans for a fraction of the cost.

Jan 19, 2024 1:30 PM EST

By Nathan Hutsenpiller
News & Food Writer, Parade

Although the Parade article would go on to state that Henckels' HXAGON "is not to be confused with HexClad," the very fact that the article made that statement itself evidences the confusion caused by Henckels' choice to copy OSTM's trademarks

and HexClad's trade dress but produce a lower-quality product.[6] For example, the Parade article warns consumers that the HXAGON "version" of HexClad cannot maintain its nonstick properties at high heat.[7]

36. Henckels' HXAGON did have one clear advantage over HexClad: Henckels set its price low—and, on information and belief, at least initially below cost. For example, Henckels set the retail price for its three-pan set of HXAGON at $89. Henckels set such a low price because it did not need to build a market of its own. By copying HexClad's trade dress, adopting the confusingly similar HXAGON name, and launching at Costco, where OSTM spent years demonstrating HexClad, Henckels could rely on consumer confusion, and on OSTM's extensive marketing and hard-earned reputation, to fuel the HXAGON launch. Henckels needed only to make an announcement that HXAGON products were available: consumer confusion would take the place of a marketing budget.

37. Henckels succeeded in trading off OSTM's nearly decade of hard work and on-the-road sweat: Despite little-to-no marketing, HXAGON was immediately noticed—not just by Parade Magazine but by consumers and influencers. When, on information and belief, Henckels struck a deal with Costco to make the initial price of HXAGON even lower, the market took notice. For example, in social media posts on TikTok[8] and Reddit[9], posters called HXAGON a "HexClad dupe" with a remarkable price:

[6] Nathan Hutsenpiller, *Costco Is Selling a Wildly Cheap Version of the Popular HexClad Pans*, Parade (Jan. 19, 2024) https://parade.com/food/costco-henckels-hxagon-skillet-set.
[7] *Id.*
[8] Video posted on @costco.sales account on TikTok https://www.tiktok.com/@costco.sales/video/7324486634920086826.
[9] Image posted on Reddit (r/cookware) https://www.reddit.com/r/cookware/comments/1ak0rpg/henckels_hexclad_dupe/.


BARNES & THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES







38. Notably, the Reddit poster picked up on the same product flaw that the author of the Parade Magazine article that misidentified HXAGON as a "version" of HexClad also noticed: Due to its inferior quality, heat could cause HXAGON to lose its nonstick properties.[10]

39. On March 8, 2024, OSTM's counsel wrote to Henckels and demanded that it cease and desist from using the confusingly similar HXAGON name or HexClad's trade dress. On March 27, 2024, Henckels' counsel sent a responsive letter denying any possibility of confusion or trademark or trade dress infringement in a strongly worded response ("March 27 letter").

---

[10] https://www.reddit.com/r/cookware/comments/1ak0rpg/henckels_hexclad_dupe/ (last visited September 1, 2026).

40. Henckels' subsequent conduct, however, revealed a different assessment of the strength of Henckels' positions. Although Henckels' March 27 letter stated that "there is virtual impossibility of establishing any likelihood of confusion," Henckels quietly tried to abandon use of the name HXAGON and instead started marketing its hybrid cookware products under the "Paradigm" name. On information and belief, HXAGON-branded products are still being sold at certain retail outlets (such as Wal-Mart); otherwise, however, Henckels appears to have completely abandoned use of the HXAGON name on a going-forward basis.

41. Although Henckels' abandonment of the HXAGON name was a (belated) step in the right direction, it was too little and too late. Henckels' decision to launch the infringing HXAGON products at Costco—which had been at the heart of OSTM's marketing strategy for HexClad—and Henckels' use of HexClad's trade dress, advertisements, and a name that emphasized hexagonal patterns (HXAGON) all connected Henckels' HXAGON products to HexClad. Indeed, although customers ***were*** confused, Henckels did not need to deceive customers into believing that HXAGON ***is*** HexClad. Rather, Henckels' needed only to trick consumers into believing that HXAGON is associated with HexClad and/or sponsored by OSTM and has the same properties as HexClad products. Henckels sought to take advantage of and trade off the goodwill that OSTM spent years developing for the HexClad brand by creating an unmistakable association in the mind of consumers between its HXAGON cookware and the HexClad brand, trademarks, and HexClad's trade dress. Henckels wanted consumers to believe that HXAGON was a "version" of HexClad, just as the article in Parade Magazine stated.

42. Moreover, despite the change in name from HXAGON to Paradigm, consumers and the public are ***still*** being deceived into believing that HXAGON is a "version" of HexClad or is otherwise associated with HexClad and/or sponsored by OSTM. Among other things:


BARNES & THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

- OSTM has been mistakenly contacted by Henckels' customers regarding warranty claims for what turned out to be Henckels HXAGON pans;
- Henckels' customers have returned or contacted OSTM to return their Henckels pans for poor performance and quality reasons; and
- Henckels' customers have submitted direct messages to OSTM on Facebook complaining about their Henckels pans losing their non-stick properties.

43. Henckels is a sophisticated company. Henckels knew exactly what it was doing when it chose a hexagonal pattern that matched HexClad's trade dress for its first line of hybrid cookware; chose HXAGON as the name of its products and emphasized the hexagonal pattern in advertisements; and selected Costco for the launch of its infringing HXAGON products. Henckels sought to unfairly associate its new product with the market leader in hybrid cookware and unjustly misappropriate the goodwill that it had taken OSTM years to generate for HexClad. Henckels' deceptive conduct was knowing and intentional. It must stop.

## COUNT I

## <u>Federal Trademark Infringement in Violation of the Lanham Act Section 32, 15 U.S.C. § 1114(a)</u>

44. OSTM realleges and incorporates its prior allegations as though fully set forth herein.

45. Henckels' promotion, advertising, provision, sale, and offering for sale of its hybrid cookware under the confusingly similar HXAGON mark has and is likely to continue to confuse, mislead, or deceive consumers and the public as to the origin, source, sponsorship, or affiliation of its products, and is intended and has and is likely to continue to cause such parties to believe in error that Henckels' products and services have been authorized, sponsored, approved, endorsed, or licensed by OSTM,

or that Henckels' HXAGON product is in some way related to or affiliated with OSTM.

46. Henckels' activities, as described herein, constitute infringement of OSTM's Registered HexClad Marks in violation of the Lanham Act, including, but not limited to, 15 U.S.C. § 1114.

47. Henckels' use of the infringing HXAGON name with the promotion, advertising, and sale of its products and services has been and continues to be willful, deliberate, unfair, false, deceptive, and is intended to trade upon the goodwill and reputation appurtenant to OSTM's Registered HexClad Marks.

48. Henckels' acts have damaged and will continue to damage OSTM.

49. As a result of these wrongful acts, OSTM is entitled to injunctive relief prohibiting Henckels from using the infringing HXAGON name, or any marks confusingly similar thereto, in accordance with 15 U.S.C. § 1116, and to recover all damages that OSTM has sustained and will sustain, and all gains, profits, and advantages obtained by Henckels as a result of its infringing acts in an amount not yet known, as well as the costs of this action, pursuant to 15 U.S.C. § 1117(a).

50. This is an exceptional case justifying the award of attorneys' fees and costs under Section 1117(a), and increased damages up to three times the amount of actual damages.

## COUNT II

## <u>Trade Dress Infringement, Federal Unfair Competition, and False Designation of Origin in Violation of the Lanham Act Section 43(a), 15 U.S.C. § 1125(a)</u>

51. OSTM realleges and incorporates its prior allegations as though fully set forth herein.

52. Henckels' conduct complained of herein constitutes trade dress infringement, federal unfair competition, and false designation of origin pursuant to 15 U.S.C. § 1125(a).



BARNES & THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

53. Henckels' intentional and unlawful use in commerce of the infringing HXAGON name and HexClad's distinctive hexagon-shaped trade dress in connection with its hybrid cookware products has caused, and is likely to continue to cause, confusion, mistake, and deception as to the origin, sponsorship, or approval of Henckels' goods and services by OSTM and therefore constitutes unfair competition and/or false designation of origin in violation of 15 U.S.C. § 1125(a).

54. As a direct and proximate result of Henckels' deliberate and willful infringement of OSTM's common law trademarks and HexClad's trade dress, OSTM has suffered and will continue to suffer irreparable harm to its business, reputation, and goodwill.

55. Henckels' acts have damaged and will continue to damage OSTM.

56. As a result of these wrongful acts, OSTM is entitled to injunctive relief prohibiting Henckels from using OSTM's common law trademarks or HexClad's trade dress or any other designs or word marks confusingly similar to them in accordance with 15 U.S.C. § 1116, and to recover all damages that OSTM has sustained and will sustain, and all gains, profits, and advantages obtained by Henckels as a result of its infringing acts in an amount not yet known, as well as the costs of this action, pursuant to 15 U.S.C. § 1117(a).

57. This is an exceptional case justifying the award of attorneys' fees and costs under Section 1117(a), and increased damages up to three times the amount of actual damages.

**COUNT III**

**<u>California Statutory Unfair Competition in Violation of California Bus. and Prof. Code § 17200 et seq.</u>**

58. OSTM realleges and incorporates its prior allegations as though fully set forth herein.

59. Henckels' activities complained of herein constitute unfair, deceptive and unlawful practices in violation of California Business and Professions Code


BARNES & THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

Section 17200 et seq. These practices have caused the actual injury of OSTM, the public, and/or consumers who are likely to be confused, deceived, and mistake the source, origin, sponsorship, affiliation, nature, and/or quality of Henckels' goods and services.

60. Henckels' actions, taken with actual or constructive knowledge of OSTM's registered and common law OSTM's trademarks and HexClad's trade dress, demonstrate an intent to trade, and do trade, on the goodwill associated with OSTM, its registered and common law OSTM trademarks, and HexClad's trade dress, with the intention of deceiving and misleading the consumers of Henckels' goods and services and the public to the great and irreparable injury of OSTM.

61. OSTM has no adequate remedy at law, and unless enjoined, Henckels will continue to unfairly compete and OSTM will suffer irreparable harm to its reputation and the associated goodwill of its brand, including the serious impairment of the value of OSTM's Registered and common-law trademarks, HexClad's trade dress, reputation, and customer goodwill.

62. As a direct and proximate result of Henckels' unfair competition, OSTM has suffered injury in fact and has lost money or property, including lost sales and revenue diverted to Henckels.

63. As a direct and proximate result of Henckels' unfair competition, Henckels has been unjustly enriched in an amount to be determined at trial. OSTM is entitled to receive from Henckels, as restitution by disgorgement of Henckels' illicit profits, any money Henckels has received or acquired as a result of its unfair competition.

64. OSTM has no adequate remedy at law. Unless enjoined, Henckels will continue to compete unfairly and OSTM will suffer irreparable harm to its reputation and the goodwill of its brand. That harm includes the serious impairment of the value of OSTM's Registered HexClad Marks, its common law HexClad trademarks, and


BARNES & THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

HexClad's trade dress, which cannot be fully measured or compensated by money damages.

65. OSTM is entitled to injunctive relief and to restitution of any money or property in which OSTM has an ownership interest that Henckels acquired by means of its unfair competition, pursuant to California Business and Professions Code § 17203.

66. OSTM also has been damaged in an amount to be proven at trial.

**COUNT IV**

**Common Law Trademark and Trade Dress Infringement**

67. OSTM realleges and incorporates its prior allegations as though fully set forth herein.

68. Henckels' conduct complained of herein constitutes trademark and trade dress infringement under the common law of the State of California.

69. As alleged above, OSTM's use of its common law trademarks and HexClad's trade dress predates Henckels' use of its HXAGON name or OSTM's distinctive hexagon design on its products.

70. Henckels' intentional and unlawful use in commerce of OSTM's common law trademarks and HexClad's trade dress has caused, and is likely to continue to cause, confusion, mistake, or deception as to the origin, sponsorship, or approval of Henckels' goods and services by OSTM and therefore constitutes trademark and trade dress infringement in violation of the common laws of the State of California.

71. As a result of these wrongful acts, OSTM is entitled to actual damages and injunctive relief in accordance with applicable California law.

**COUNT V**

**Common Law Unfair Competition**

72. OSTM realleges and incorporates its prior allegations as though fully set forth herein.

73. Henckels' activities complained of herein constitute unfair competition, unlawful practices and passing off in violation of the common law of the State of California.

74. As more fully alleged above, Henckels' use of OSTM's common law trademarks and HexClad's trade dress in connection with goods and services that are identical to, competitive with, related to, similar to, or within the zone of natural expansion of those offered by OSTM in connection with HexClad products constitutes unfair methods of competition, willful and intentional acts and practices, and unfair and deceptive acts and practices wherein Henckels' conduct is likely to cause confusion as to the source of Henckels' goods and services.

75. Henckels' actions, taken with actual or constructive knowledge of OSTM's common law trademarks and HexClad's trade dress, demonstrate an intent to trade on the goodwill associated with the HexClad brand and distinctive hexagon design, with the intention of deceiving and misleading the consumers of Henckels' goods and services and the public, to the great and irreparable injury of OSTM.

76. The conduct of Henckels as alleged herein will, unless restrained, damage OSTM in an amount to be determined at trial and will cause irreparable harm, including the serious impairment of the value of OSTM's common law trademarks and HexClad's trade dress. OSTM therefore requests that this Court enjoin Henckels from further engaging in consumer fraud by infringing on OSTM's common law trademarks and HexClad's trade dress to describe and/or signify Henckels' competing goods and services.

77. OSTM has been damaged in an amount to be proven at trial and OSTM is entitled to an accounting of Henckels' profits.

## PRAYER FOR RELIEF

WHEREFORE, OSTM respectfully requests that this Court:

A. Enter such orders as are necessary to enter judgment in favor of OSTM and against Henckels on all claims and causes of action asserted by OSTM;



BARNES & THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

B. Award OSTM damages under 15 U.S.C. §§ 1117, 1125, and California statutory and common law in an amount to be determined at trial;

C. Order Henckels to disgorge its profits from its unlawful conduct;

D. Order restitution to OSTM;

E. Award OSTM all costs, legal fees and other expenses incurred in this proceeding;

F. Enjoin Henckels from further infringing OSTM's trademarks and trade dress; and

G. Because of the exceptional nature of this case, award OSTM its reasonable attorneys' fees and costs relating to this action, including but not limited to pursuant to 15 U.S.C. § 1117.

H. Award such other and further relief as this Court deems appropriate.

Dated: November 9, 2026

**BARNES & THORNBURG LLP**

By: */s/ Kevin D. Rising*__________

*Attorneys for Plaintiff*
ONE SOURCE TO MARKET, LLC

**JURY DEMAND**

Plaintiff demands a trial by jury on all matters decidable by jury.

Dated: November 9, 2026

**BARNES & THORNBURG LLP**

By: */s/ Kevin D. Rising*

*Attorneys for Plaintiff*
ONE SOURCE TO MARKET, LLC